IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JEREMY SAENZ, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROD'S PRODUCTION SERVICES, LLC and RODNEY SMITH,<br><br>Defendants. | NO. 2:14-cv-00525 RB-GBW |

**MEMORANDUM OPINION AND ORDER**

For this collective action, Plaintiff Jeremy Saenz and Defendants Rod's Production Services, LLC, and Rodney Smith were able to agree on a consent form (Doc. 70), and the Court **APPROVES** the proposed consent form. The parties, however, disagree over the content of the class notice. (Doc. 58, 59.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** in part and **DENIES** in part Plaintiff's and Defendants' proposed class notices. (Docs. 58, 59.)

**I.     BACKGROUND**

On behalf of himself and others similarly situated, Plaintiff sued Defendants alleging wage violations under the Fair Labor Standards Act ("FLSA") and New Mexico wage and hour law. (Compl.) Plaintiff, a flow tester working for Defendant RPS, alleges that he has been improperly classified as an independent contractor. (*Id.* ¶ 1.) Flow testers, or flowhand operators, monitor oil and gas wells. (*Id.*) Defendants contracted with flow testers in several states. (*Id.* ¶ 22.) Upon the parties' stipulation, the Court approved a conditional certification and class definition covering current and former flowhands in New Mexico, Oklahoma, Texas, Ohio, and Pennsylvania. (Doc. 49 as corrected by Doc. 54.)

At a Rule 16 hearing, the United States Magistrate Judge stated that he was inclined to direct the Defendants to produce a list of prospective class members. (Doc. 22 at 2.) Based on the produced list of names, Plaintiff sent 350 prospective class members an "investigation letter" informing them about the nature of the suit in mid-November. (Ex. 2, Doc. 55-2; Doc. 58 at 4.) Plaintiff counsel reports that 98 letters were returned as undeliverable. (Doc. 58 at 4.)

On February 6, 2015, Plaintiff filed a motion to approve a proposed class notice. (Doc. 58.) Defendants filed a cross motion to adopt their version of the class notice. (Doc. 59.) The parties were able to agree on the formatting and content of the consent form. (Doc. 70.) The Court now resolves the outstanding disputes over the class notice.

## II.     LEGAL STANDARD

FLSA's provisions "are remedial and humanitarian in purpose." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). To join as a plaintiff in an action to recover unpaid wages, similarly-situated, concerned employees must consent in writing. FLSA, 29 U.S.C.A. § 216(b). Accordingly, counsel representing parties in FLSA actions send prospective class members notices to inform them about the lawsuit. Employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). District courts have discretion to approve the content of FLSA class notices. *Id.* at 170 (interpreting FLSA provisions to determine notice procedures under the Age Discrimination in Employment Act).

### III. DISCUSSION

The parties largely agree on the form and content of the notice.  For instance, they agree to the wording for the majority of the notice and have agreed to send the notice via mail and email.  There are currently seven outstanding disputes.

#### A. Opt-in Period

Plaintiff requests a 70-day opt-in period.  (Doc. 58 at 2-3.)  Defendants seek a 45-day opt-in.  (Doc. 59 at 2-4.)  Plaintiff argues that given the nature of flow testers' work, they are often away from mail and email.  (Doc. 58 at 2-3.)  The prospective class members are also located in different states.  (*Id.*)  Because of this obstacle to timely notice, Plaintiff reasons that a 45-day opt-in period is too short.  (*Id.*)  Plaintiff cites to cases within the Tenth Circuit that approved a 90-day notice period and rejected a 60-day notice period as too short.  *See, e.g.*, *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011) (considering a 60-day opt-in "unusually[] short"); *see also Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *10 (D. Colo. Apr. 21, 2012) (approving 90-day opt-in period).  Defendants, likening the opt-in period to deadlines under the Federal Rules of Civil Procedure, consider 70 days too long.  (Doc. 59 at 3.)  The cases Defendants cite for shorter opt-in periods involve workers who presumably have access to their mail every day or have similarly situated coworkers in their place of business.  (*Id.*)  Given the circumstances in this case, the Court considers a 70-day opt-in period reasonable.  The Court approves Plaintiff's proposed provision and overrules Defendants' objection.

#### B. Reminder Notices

Plaintiff wishes to send the class notice twice during the opt-in period.  (Doc. 58 at 3-5.)  Defendants, who have agreed to email notice, argue that the multiple forms of notice, an

extended opt-in period, and a reminder notice go too far. (Doc. 63 at 3-5.) Defendants point to Plaintiff's earlier "investigation letter" and suggest that sending too many communications borders on harassment. (Doc. 59 at 4.)

Courts across the nation are divided on the appropriateness of reminder letters. *See Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 274 (S.D.N.Y. 2012) (collecting cases). Courts in this Circuit generally deny plaintiffs' requests to send reminder notices. *See In re Bank of Am. Wage & Hour Employment Litig.*, 286 F.R.D. 572, 601 (D. Kan. 2012); *Barnwell v. Corrections Corp. of Am.*, No. 08–2151–JWL, 2008 WL 5157476, at *6 (D. Kan. Dec. 9, 2008); *Young v. Dollar Tree Stores, Inc.*, No. 11-CV-1840-REB-MJW, 2012 WL 5494000, at *1 (D. Colo. Nov. 13, 2012).

Here, given that prospective plaintiffs will receive two forms of communication, and that Plaintiff's counsel has already sent out a communication to class members, the Court finds the reminder unnecessary. Defendants' objection to this proposal is sustained.

### C. Counterclaims and Court Costs

Defendant objects that Plaintiff's proposed notice does not inform prospective class members that they may (1) have to pay court costs if plaintiffs do not prevail, and (2) face counterclaims. (Doc. 59 at 7-8.) Plaintiff requests that if the Court does include language regarding counterclaims or court costs, that the language be sufficient to notify prospective plaintiffs, but no more. (Doc. 62 at 7.) Plaintiff deems Defendants' repeated, multi-line warnings to be nothing more than a "shameful attempt to deter participation." (Doc. 62 at 8.)

In the Tenth Circuit, courts regularly include a notice that plaintiffs may have to pay court costs if they do not prevail. *See, e.g.*, *Creten-Miller v. Westlake Hardware, Inc.*, No. CIV 08-2351-KHV, 2009 WL 2058734, at *3-4 (D. Kan. July 15, 2009); *Wass*, 2011 WL 1118774, at

*8.  Plaintiff offers little argument against a notice of court costs.  Plaintiff is ordered[1] to alter the first paragraph of Section 9 as follows:

> If you choose to join this lawsuit, you will be bound by any judgment, favorable or unfavorable, on any claim you may have under the FLSA.  If you win, you may be eligible to share in the monetary award, including overtime wages and liquidated damages.  If you lose, no money will be awarded, and you will not be able to file another lawsuit regarding the matters raised in this lawsuit.  Also, if plaintiffs lose, they could be responsible for paying court costs and expenses.

Plaintiff vigorously opposes any mention of counterclaims in the class notice.  Noting that the Court has not yet approved any counterclaims against prospective class members, Plaintiff argues that the mere potential of a counterclaim does not justify threats in the class notice.  In support of this argument, Plaintiff cites to a half dozen courts sitting in the Second and Ninth Circuits that denied similar requests to reference counterclaims in notices.  (Doc. 58 at 6 n.5.)  Courts in the Tenth Circuit have also rejected language about counterclaims in the class notice.  *See Hose v. Henry Indus., Inc.*, __ F. Supp. 3d __, No. 13-2490-JTM, 2014 WL 4749431, at *12 (D. Kan. Sept. 24, 2014) (denying request to include a proviso regarding a counterclaim for indemnification); *In re Bank of Am. Wage & Hour Employment Litig.*, 286 F.R.D. at 600 ("Without a showing that any particular counterclaim or defense has potential merit, the concerns about a chilling effect outweigh the benefit of making a generic reference to counterclaims.").

Defendants assert that notifying prospective class members about counterclaims is necessary to help them make informed decisions.  (Doc. 59 at 6-7.)  Defendants cite to a Northern District of Oklahoma case where the court approved a consent form that mentioned "potential counterclaims."  (Doc. 59 at 7.)  The court, however, made no ruling on the language.

---

[1] Plaintiff is also ordered to define the FLSA abbreviation appropriately in Section 2 of the notice.

Additionally, Defendants argue that they meet the standard from the District Court of Kansas. (Doc. 63 at 7.) In the *Bank of America Wage and Hour Litigation*, the court ruled that "[w]ithout a showing that any particular counterclaim or defense has potential merit, the concerns about a chilling effect outweigh the benefit of making a generic reference to counterclaims." 286 F.R.D. at 600. Defendants cite this Court's opinion for evidence that their counterclaims have merit. (Doc. 63 at 7.) Previously, the Court permitted Defendants to amend their pleadings, noting that Defendants made a plausible argument that the Named Plaintiff was an independent contractor. (Doc. 60 at 5.) The Court did not comment on the merits of Defendants' counterclaims against the Named Plaintiff, let alone the un-alleged counterclaims against prospective class members.

In the uncontested portion of the proposed class notice, Defendants state their position that the "flowhand operators were properly classified as independent contractors. . . ." (Doc. 59-3 at 2.) This sufficiently describes Defendants' primary defense. Defendants' proposed language about the counterclaims in Sections 7, 8, and 11 is rejected.

### D. Defense Counsel's Information

Defense counsel wish to include their contact information in the proposed notice because it "levels the playing field." (Doc. 63 at 10.) Plaintiff opposes the inclusion of this information on the grounds that employers' influences can be coercive. (Doc. 58 ¶¶ 6-7.)

The Court rejects Defendants' request to include defense counsel's contact information. Although there is a divide among district courts within the Tenth Circuit, more courts have denied defendants' requests to include defense counsel's contact information. *Compare Creten-Miller*, 2009 WL 2058734, at *3 (permitting defendants to include contact information), *with Wass*, 2011 WL 1118774, at *11 (rejecting defendants' contact information), and *Smith*, 2012 WL 1414325, at *8 (rejecting defendants' contact information). Defendants concede that having

prospective class members contact them could present ethical conflicts, as evidenced by their promise to have any prospective class member sign a waiver before talking to them. (Doc. 59 at 10 & n.7.) Including defense counsel's information only invites ethical conflict. Moreover, the Court finds Defendants' argument about leveling the playing field unavailing. Presumably, if the flow testers wish to contact RPS, they know how.

Defendants' request to include defense counsel's contact information in the class notice is denied.

### E.  Fee Arrangement Language

Plaintiff proposes to include language in the class notice that states, "In the event there is a recovery, Plaintiff's counsel may receive a percentage of any settlement obtained or money judgment entered in favor of the Class in a reasonable amount to be approved by the Court." (Doc. 58-1 at 4.)  Defendants want a more extensive discussion of the contingency fee arrangement. (Doc 59 at 7-8.) Defendants claim that their proposed language is inherently reasonable because it comes directly from Plaintiff's counsel's contract. (*Id.* & n.4.) Plaintiff posits that this additional detail is inappropriate because ultimately the Court will decide what constitutes a reasonable amount of attorneys' fees. (Doc. 58 at 8.)

The Court agrees with other courts in this Circuit that the class notice does not have to describe "counsel's entire fee arrangement." *Wass*, 2011 WL 1118774, at *9 (quotations omitted). Counsel's contract discloses those details. While the class notice is a court-approved document, counsels' contracts are not. The Court, however, orders Plaintiff to take the word "reasonable" out of its proposed language. While "reasonable attorneys' fee" is the appropriate legal standard, many citizens may not share the legal world's understanding of the word

"reasonable." Defendants' objections are denied and Plaintiff's proposed language is approved as modified.

### F. Preservation of Evidence

Defendants request a provision warning prospective class members that they must preserve evidence. (Doc. 59 at 5.) Plaintiff does not oppose some language regarding the preservation of evidence, but considers Defendants' proposed language to be "lengthy" and "intimidating." (Doc. 58 at 9.) Additionally, Plaintiff argues that Defendants' proposed language is overly broad, includes irrelevant items, and unnecessarily encompasses personal and sensitive information that the Magistrate Judge determined are beyond the scope of discovery. (Doc. 62 at 6; Doc. 58 at 9 & n.8.) As an alternative, Plaintiff proposes sending a spoliation notice to class members who have opted in. (Doc. 58 at 9.) Defendants consider this alternative an unacceptable delay because the duty to preserve evidence begins the moment a person reasonably anticipates litigation. (Doc. 63 at 5.)

The parties offer two competing clauses. Plaintiff suggests:

> The Plaintiff's attorneys will request time and payroll records from RPS and analyze them to determine how much you are owed. If you do have records, however, you should not delete them or throw them away. This may include your invoices, text messages and emails, and business records related to RPS.

(Doc. 58 at 9.) Defendants reject this language as insufficient and consider the sentence about Plaintiff's attorneys misleading. (Doc. 63 at 6.) Defendants instead propose:

> If you join this lawsuit, you will be required to preserve all possible evidence. Preserving evidence means that you may not delete, destroy, sell, or in any way get rid of any cell phones, computers, text messages, emails, email accounts, social media accounts, social messages or posts, or hardcopy documents. Possible evidence that you must preserve and keep includes documents and electronic information related to your work for RPS. For example, this may include, but is not limited to: invoices you sent to RPS, any text messages and emails between you and any RPS representative, any text message and emails between you and other flowback companies, any text messages and emails between you and

> representatives of the oil and gas companies that RPS contracts with, and all tax or business records you maintain regarding your flowback work.

(Doc. 59-1 at 3-4.)

The Court agrees that some spoliation notice is reasonable and helpful for both parties. Defendants' proposed language, however, is simultaneously too detailed and too vague. To be effective, a notice must be comprehensible. The Court orders the parties to include the following language:

> If you join this lawsuit, you will be required to preserve all relevant evidence. If you have records or communications related to your work for RPS, do not delete them or throw them away. Potential evidence includes invoices, business records, text messages, emails, and documents related to your flowback work with RPS or other companies.

The Court reasons that this notice is sufficient to alert the flowhands that they must keep valuable evidence for both sides.

### G. Travel Obligations

Defendants request a provision in the notice that alerts prospective class members that they could be required to travel to this Court in Las Cruces, New Mexico. (Doc. 59 at 9.) Plaintiffs object that Defendants' proposed language suggests that class members will have to travel to Las Cruces for depositions—an unlikely occurrence considering that neither counsel are located in New Mexico. (Doc. 58 at 10.) Several courts in the Tenth Circuit have approved notices with a travel proviso. *See Cretin–Miller*, 2009 WL 2058734, at *5; *Wass*, 2011 WL 1118774, at *10; *Smith*, 2012 WL 1414325, at *8.

Currently, Defendants' proposed language reads: "If you join this lawsuit, you are consenting to the jurisdiction of the Court and may be required to [sic] Las Cruces, New Mexico to sit for a deposition or testify in court." (Doc. 59-1 at 3.) The Court agrees with Plaintiff that this language may be misleading, considering that out-of-state counsel are unlikely to set

9

depositions in Las Cruces. Plaintiff cannot deny, however, that this Court sits in Las Cruces and if class members are called to testify in court, they will have to travel to New Mexico. The Court directs the parties to draft language notifying prospective class members that they may be required to sit for a deposition and, separately, may be asked to testify in court in Las Cruces, New Mexico. This is a reasonable resolution of persuasive precedent and Plaintiff's concern.

## IV. CONCLUSION

The parties stipulated to a class consent form for this case. The consent form attached as Exhibit A to the Unopposed Motion to Approve Consent Form (Doc. 70) is approved. In this opinion, the Court resolved the outstanding disputes over the class notice. Before sending out the final notice, Plaintiff must revise the notice in accordance with this Order and submit the revised notice to Defendants for approval. Defendants shall have five business days to review whether the form conforms to this Order. Before bringing any objections to the Court, the parties must first confer and attempt to resolve their disputes.

**THEREFORE,**

**IT IS ORDERED** that:

(1) Plaintiff's Motion to Approve Proposed Notice (Doc. 58) is **GRANTED** in part and **DENIED** in part;

(2) Defendants' Motion to Adopt Proposed Notice (Doc. 59) is **GRANTED** in part and **DENIED** in part; and

(3) Plaintiff's Unopposed Motion to Approve Consent Form (Doc. 70), is **APPROVED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE