IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JEREMY SAENZ, On Behalf of Himself and All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) ROD'S PRODUCTION SERVICES, LLC ) and RODNEY SMITH, ) ) Defendants. ) | NO. 2:14-cv-00525 RB-GBW |

**MEMORANDUM OPINION AND ORDER**

Defendants Rod's Production Services, LLC, and Rodney Smith request leave to send "a corrective notice" to putative class members in this collective action. (Doc. 55.) Having reviewed the parties' submissions and arguments, the Court **DENIES** Defendants' proposal to send a corrective notice.

**I.   BACKGROUND**

On behalf of himself and others similarly situated, Plaintiff sued Defendants alleging wage violations under the Fair Labor Standards Act ("FLSA") and New Mexico wage and hour law. (Compl.) Plaintiff, a flow tester working for Defendant Rod's Production Services ("RPS"), alleges that he has been improperly classified as an independent contractor. (*Id.* ¶ 1.) Flow testers, or flowhand operators, monitor oil and gas wells. (*Id.*) Defendants contracted with flow testers in several states. (*Id.* ¶ 22.)

Before the class was certified, at a Rule 16 hearing, the United States Magistrate Judge stated that he was inclined to direct the Defendants to produce a list of prospective class members. (Doc. 22 at 2.) Defendants produced the information. Based on the produced list of

names, in mid-November, Plaintiff sent 350 prospective class members an "investigation letter" informing them about the nature of the suit. (Ex. 2, Doc. 55-2; Doc. 58 at 4.) This letter represented that (1) Plaintiff's counsel has significant experience representing flow testers in wage and hour litigation, (2) the Court ordered RPS to provide the flow testers' contact information, (3) Plaintiff's counsel believes each flow tester's claim is worth more than $10,000, and (4) Plaintiff's counsel would appreciate it if the flow testers contacted him. (Doc. 55-2.)

On January 22, 2015, upon the parties' stipulation, the Court approved a conditional certification and class definition covering current and former flowhands in New Mexico, Oklahoma, Texas, Ohio, and Pennsylvania. (Doc. 49 as corrected by Doc. 54.) Two weeks after the class was certified, Plaintiff filed a motion to approve a proposed class notice. (Doc. 58.) Defendants filed a cross motion to adopt their version of the class notice. (Doc. 59.) The Court resolved the outstanding disputes over the class notice on March 6, 2015 (Doc. 72) and approved a modified class notice and consent form (Doc. 76).

On February 3, 2015, Defendants filed the current motion, proposing to send out a corrective notice to all the flow testers. (Doc. 55.) Defendants wish to respond directly to Plaintiff's "investigation letter," sent in November 2014, and to "correct and balance-out these statements." (Doc. 55 at 2.) In this motion, Defendants ask the Court to decide whether Plaintiff's so-called investigation letter was appropriate and, if it was inappropriate, what the remedy should be. (*Id.*) Finally, Defendants also ask the Court to clarify the scope of communication that counsel can have with potential class members. (Doc. 55 at 9; Doc. 73.)

## II.   DISCUSSION

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over . . . and to enter appropriate orders governing the conduct of

counsel and parties" in class actions. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). And they possess the same duty in managing collective actions. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (holding that *Gulf Oil*'s reasoning applies to collective actions, and district courts have a "substantial interest in communications").

### A. Plaintiff's Letter and Defendants' Remedy

The Court does not consider Plaintiff's investigation letter an "appropriate" communication. It is solicitous, but does not clearly label the letter as an advertisement. Attorneys have the right to engage in commercial speech so long as it is not false, deceptive, or misleading. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985). They may also send targeted, direct-mail solicitation. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 475 (1988). But attorneys must work within the bounds of ethical rules.

Although the Court questions the propriety of Plaintiff's communication, the Court declines to impose either of Defendants' proposed remedies. Defendants rely on two district court cases in support of their request to send a corrective notice (Doc. 55), or in the alternative, allowing Defendants to discover the names of all the plaintiffs who responded to Plaintiff's letter, (Doc. 73 at 9). The Court finds both cases distinguishable.

In *Rubery v. Buth-Na-Bodhaige, Inc.*, the district court in the Western District of New York, in response to the plaintiff's solicitous letter, proposed sending a corrective notice to plaintiffs once the class was certified. 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007). The plaintiff's solicitation letter was misleading and included the defendants' offer of judgment as an attachment. *Id.* After the plaintiff's letter—but before the Court certified the class—workers started "opting-in" to the litigation. *See Rubery*, No. 04-CV-6337L, slip op. at 9 (W.D.N.Y. Aug. 8, 2008). More than a year before the court conditionally certified the class and approved a

class notice, consent plaintiffs started flooding the case docket. (*Rubery*, No. 04-CV-6337L, ECF Nos. 80-100, 101-120, 125-135, 142,151, 161, 172, 174.) These plaintiffs "opted in" to the case long before the Court approved any communication to the proposed class. Ultimately, it appears that the court did not order a separate corrective letter beyond the court-approved class notice. *See Rubery*, No. 04-CV-6337L, slip op. at 9 (W.D.N.Y. Aug. 8, 2008). The case is distinguishable. In the present case, before the plaintiffs make a decision about opting-in, they will have the benefit of a court-approved notice.

Separately, in *Davis v. Westgage Planet Hollywood Las Vegas, LLC*, a court in the District of Nevada permitted the defendants to take additional discovery after the plaintiff posted a misleading, extra-judicial website. No. 2:08-CV-00722, 2010 WL 5490770, at *1 (D. Nev. Jan. 4, 2010), *report and recommendation adopted*, No. 2:08-CV-00722, 2010 WL 5490775 (D. Nev. Nov. 8, 2010). In that case, after the class had been conditionally certified and class notice approved, plaintiff's counsel created a website "in order to attract opt-in Plaintiffs outside of the Court's notice procedure." *Id.* The website allowed users to download the opt-in form and consent to the litigation. *Id.* In response, the court allowed the defendants to discover which plaintiffs opted-in because of the website, as opposed to the court-approved communications. *Id.* Again, the Nevada plaintiff entirely circumvented the court's notice procedure. The opt-in plaintiffs who read the website did not have the guidance of the court-approved notice. As such, this case is also distinguishable.

The Court believes that the approved class notice remedies many of the issues the Defense counsel raises. In their proposed corrective notice, Defendants wish to state, first, that RPS disagrees with Plaintiff's contentions. (Doc. 55-1 at 1.) The class notice says as much. Second, Defendants want to clarify that the Court has no opinion on the merits of the case. (Doc.

55-1 at 2.) Again, the class notice says exactly that. Third, Defendants state their belief that Plaintiff will be responsible for paying their attorneys' fees. (Doc. 55-1 at 2.) The class notice includes such language. Fourth, Defendants include their counsel's contact information and invite flow testers to contact them. (Doc. 55-1 at 2.) The Court expressly rejected that idea in the class notice and will not permit it here. (Doc. 72 at 6.) Finally, Defendants would have included language in the corrective notice advising flow testers that Plaintiff's letter was merely an advertisement. (Doc. 55-1 at 2.) The Court considers the letter solicitous, but does not think that this outstanding concern warrants sending a second, potentially confusing communication.

The Court does not condone the license that Plaintiff's counsel took by issuing an arguably true, but misleading solicitation letter without properly labeling the communication. Plaintiff's actions are not without consequences. Plaintiff requested permission to send a reminder notice during the notice period—a request which the Court denied. The Court would have given this request more consideration had Plaintiff not sent the solicitation letter. Additionally, the Court will carefully monitor Plaintiff to watch for further confusing or misleading communications. Plaintiff's counsel must be scrupulous in its communications with potential class members.

The Court may have considered additional remedies, such as direct language in the class notice, had the Defendants raised this issue earlier. Defendants knew about this letter in December 2014, at the latest. (Rebus Aff., Dec. 29, 2014, Doc. 55-5.) At this point, during the notification stage, the Court does not think that the flow testers will benefit from a separate corrective notice. They will receive the court-approved class notice and can make informed decisions based on that.

B. **Scope of Communications with Potential Class Members**

Defense counsel asks the Court to clarify the scope of communication it can have with class members that have not opted-in. (Doc. 73 at 9.) Both parties know that defense counsel cannot communicate directly with opt-in plaintiffs. The question is whether Defendants may communicate with potential class members during the notification stage.

Defendants represent that they interviewed flowhands prior to class certification, but aver that the communications were professional and not coercive. (*Id.* at 10.) Defendants wish to continue such interviews with potential class members who voluntarily approach RPS in order to investigate Plaintiff's claims. (*Id.*) "To protect against claims of coercion," Defendants propose requiring potential class members who contact RPS to sign a consent form before communication with them. (Doc. 55 at 9.)

Historically, courts have carefully scrutinized defendant-employers' communications with potential class members. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("A unilateral communications scheme, moreover, is rife with potential for coercion."); *see also Duarte v. PPG Indus., Inc.*, No. 09-1366-JTM-DWB, 2010 WL 571989, at *1 (D. Kan. Feb. 11, 2010) (taking steps to remedy a confusing letter from defense counsel). Courts must manage communications to ensure that a defendant's communications do not become coercive. *Id.* at 1200, 1203. However, a court's authority to control attorneys' and class members' communications is limited. *Gulf Oil*, 452 U.S. at 101. Both attorneys and class members have constitutional rights to speak. *Id.*

After receiving the class notice, some potential class members may wish to contact Defendant RPS for more information. They have a right to do so. In contrast, the Court would not endorse defendants holding a forced audience with potential class members. *See Stransky v.*

*HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1109 (D. Colo. 2013) (finding that defendant's mandatory meetings with potential class members to be coercive and improper). However, absent some showing of abuse, "there is no prohibition against pre-'opt-in' communication with a Section 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice." *Id.* at 1105-06 (citations omitted). Accordingly, if potential class members voluntarily contact RPS, then defense counsel may communicate with them. Should the communications become abusive, then Plaintiff can present evidence of such abuses to the Court and seek protective measures. *Id.*; *Duarte*, 2010 WL 571989, at *1. The Court approves of Defendants' proposal to get class members to sign consent forms before being interviewed. *Accord Bell v. Addus Healthcare, Inc.*, No. C06-5188RJB, 2007 WL 2752893, at *3 (W.D. Wash. Sept. 19, 2007) (approving the defendant's use of disclosure statements before interviewing potential class members).

### III. CONCLUSION

Although the Court considers the Plaintiff's solicitation letter to have been improper, the Court denies Defendants' proposed remedies because they are unnecessary in light of the court-approved class notice. Furthermore, the Court clarifies that Defendants are not barred from communicating with potential class members, but advises them to take precautions to limit any coercive effects.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Send Corrective Notice (Doc. 55) is **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE