IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JEREMY SAENZ, On Behalf of Himself and All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>ROD'S PRODUCTION SERVICES, LLC, and RODNEY SMITH,<br><br>  Defendants.<br><br>and<br><br>ROD'S PRODUCTION SERVICES, LLC,<br><br>  Defendant/Counterclaim Plaintiff,<br><br>v.<br><br>JEREMY SAENZ d/b/a SAENZ SERVICES,<br><br>  Plaintiff/Counterclaim Defendant. | NO. 2:14-cv-00525 RB-GBW |

**MEMORANDUM OPINION AND ORDER**

Defendant Rod's Production Services, LLC amended its Answer and filed counterclaims against Plaintiff Jeremy Saenz. Plaintiff moved to dismiss the counterclaims. (Doc. 71.) Defendant Rod's Production Services opposed the motion. (Doc. 75.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** Plaintiff's motion.

I.  BACKGROUND

On behalf of himself and others similarly situated, Plaintiff sued Defendants Rod's Production Services and Rodney Smith alleging wage violations under the Fair Labor Standards Act ("FLSA") and New Mexico wage and hour law. (Compl.) Plaintiff, a flow tester or

flowhand operator, monitored oil and gas wells for Defendant Rod's Production Services. (*Id.* ¶ 1.) In this suit, Plaintiff alleges that he and other similarly situated workers were improperly classified as independent contractors. (*Id.*)

Defendants contracted with flow testers in several states. (*Id.* ¶ 22.) Upon the parties' stipulation, the Court approved a conditional certification and class definition covering current and former flowhands in New Mexico, Oklahoma, Texas, Ohio, and Pennsylvania. (Doc. 49 as corrected by Doc. 54.) The parties agree that Plaintiff Jeremy Saenz personally worked in New Mexico. (Compl. ¶¶ 25, 26; Ans. ¶¶ 25, 26; Countercl. ¶ 4.) As of yet, the parties have not specified whether Plaintiff worked in additional states.

This Order focuses on Defendant Rod's Production Services' Amended Answer. Defendant sought leave to file an Amended Answer, including counterclaims for a declaratory judgment, breach of contract and indemnification, and unjust enrichment and setoff. (Doc. 25; Doc. 25-1 at 19-24 ¶¶ 29-64.) Plaintiff opposed the amendment on the basis of futility. (Doc. 36.) In its Memorandum Opinion and Order, the Court permitted Defendant to amend its Answer and include the counterclaims. (Doc. 60.) The Court found that Plaintiff did not meet the standard to show that the counterclaims were futile and stated that, for any future motions to dismiss, the parties needed to brief the conflict of law issue, if any. (*Id.* at 4.) Presently, Plaintiff again opposes each counterclaim by moving to dismiss. (Doc. 71.)

## II. LEGAL STANDARD

To survive a motion to dismiss, a "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing the sufficiency of a complaint, the court must first identify

the factual allegations and disregard any conclusory statements. See *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Next, the court must determine if the claimant's factual allegations state a plausible claim. *Id.* The complaint must have "enough factual matter (taken as true) to suggest that [the claimant] is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Plaintiff challenges all three counts in Defendant's Counterclaim, including Defendant's request for declaratory judgment (Count 1); claim for indemnification and breach of contract (Count 2); and claim for unjust enrichment and equitable set-off (Count 3). The Court considers each challenge in turn.

#### A. Declaratory Judgment Request

Defendant's first cause of action seeks a declaratory judgment that the Agreement between Plaintiff and Defendant is "binding, enforceable, and valid." (Countercl. ¶ 30.) In its first counterclaim, Defendant avers that "[a]n actual controversy exists between [Defendant] and Saenz Services." (*Id.* ¶ 31.) The controversy, as defined by Defendant, is whether Plaintiff is an employee under FLSA or, alternatively, whether the independent contractor Agreement is valid. (*Id.* ¶¶ 32-33.) Plaintiff seeks to dismiss this cause of action on the basis that it "is repetitious and unnecessary." (Doc. 71 at 19.) A district court can dismiss a redundant counterclaim for declaratory judgment where the issues "will be rendered moot by adjudication of the main action." *Am. Gen. Life Ins. v. Bagley*, No. 2:13-CV-00089-RJS, 2013 WL 5916824, at *5 (D. Utah Nov. 4, 2013) (citation omitted).

A "district court is not obliged to entertain every justiciable declaratory claim brought before it." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994). The Tenth Circuit has suggested that, when deciding whether to hear a claim for declaratory judgment, a district court should ask two primary questions:

> Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so.

*Id.* at 983. Additionally, the Circuit identified other considerations, such as "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'" and "whether there is an alternative remedy which is better or more effective." *Id.* (citing *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir. 1987)). "[A] counterclaim seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim." *Prograde Ammo Grp. LLC v. Perry*, No. 14-CV-00884-PAB-MEH, 2015 WL 1064266, at *3 (D. Colo. Mar. 9, 2015) (citation omitted).

In this instance, the Court finds that the request for declaratory judgment is duplicative and unnecessary, and on that basis, the Court will decline to hear the claim. As explained in the Counterclaim, the crux of the declaratory judgment controversy is whether Plaintiff is an independent contractor under the Agreement or an employee under statute. (*Id.* ¶¶ 31-33.) That issue will be fully addressed in the main action. Defendant asserts that a declaratory judgment will answer additional questions, such as whether the Agreement is valid for other "employees." (Doc 75 at 23.) Other employees, however, are not involved in the counterclaim—only Plaintiff is named and only Plaintiff's contract is before the Court. In contrast, the main action will have a greater impact on the classification of Defendant's other contractor-employees. Defendant also

asks if its Workers' Compensation affidavit is still valid (Doc. 75 at 23), but the Counterclaim does not raise any factual issues regarding Workers' Compensation. Workers' Compensation is only mentioned as evidence that Plaintiff is an independent contractor and not entitled to FLSA's protection. (Countercl. ¶ 21.) Defendant's examples of "unanswered questions" only reaffirm the Court's opinion that the declaratory judgment action is redundant.

Ultimately, the issues that Defendant raises with its request for declaratory judgment are better addressed in the main action than in a separate declaratory judgment action against Plaintiff. As discussed above, the main action will have a broader impact for more contractor-employees. Moreover, a finding that the Agreement between Plaintiff and Defendant is valid will not decisively determine the FLSA action, because classification under FLSA is "not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994). Thus, hearing the request for declaratory judgment will not clarify the legal issues, will not terminate the proceeding, and is not necessary given the alternative remedy of hearing the FLSA main action. *See State Farm Fire & Cas. Co.*, 31 F.3d at 983 (listing considerations for deciding to hear a declaratory action). The Court declines to hear the request.

### B. Indemnification Claim

In Count 2 of the Counterclaim, Defendant asserts a claim for indemnification and breach of contract. Plaintiff argues that the Agreement does not support Defendant's claim. (Doc. 71.) In order to evaluate whether the indemnification provision supports Defendant's claim, the Court must interpret the contract. Before doing so, the Court must first determine which law applies to the contract's interpretation. After determining the correct legal standard, the Court can then

interpret the substantive clause and assess whether it supports Defendant's claim for indemnification and breach of contract.

### *1. Governing Law*

The parties continue to disagree over which law governs the interpretation of their contract. Notably, Plaintiff and Defendant signed the Master Service Agreement ("Agreement") in Texas. (Countercl. Ex. 1 at 4.) However, the parties agree that Plaintiff performed contract work in New Mexico. (Compl. ¶¶ 25, 26; Ans. ¶¶ 25, 26; Countercl. ¶ 4.) The parties do not presently contend that Plaintiff performed work under the Agreement in any other state.

The parties first disagreed over the interpretation of their Agreement when Plaintiff opposed Defendant's proposed counterclaims. (Docs. 25, 36, 37.) At that time, Plaintiff argued that the indemnification provision was void under New Mexico law and under other jurisdictions' laws. (Doc. 36 at 10-11.) In reply, Defendant argued the "[t]he Court must apply *Texas* substantive law to interpret the indemnification clause." (Doc. 37 at 3.) The Court asked the parties to address the conflict of law issue. (Doc. 60 at 4.) Citing *Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1173 (N.M. 2008), the Court noted that "New Mexico no longer rigidly applies the 'place of contracting' rule." (*Id.*) Currently, the parties are equivocal about which state's law applies and instead, each party contends that it has the winning argument under either Texas or New Mexico law. (Doc. 71 at 4-9; Doc. 75.)

"New Mexico adheres to a traditional conflicts of law analysis contained in Restatement (First) of Conflicts of Law (1934)." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 775 P.2d 233, 235 (N.M. 1989). In *Ferrell*, the New Mexico Supreme Court determined that "the rigidity of the Restatement (First) is particularly ill-suited for the complexities present in multi-state class actions." 188 P.3d at 1173. But *Ferrell*'s holding was limited to multistate

class actions. It did not overturn the use of the Restatement (First) in any other type of litigation. *Id.* at 1171-72.

Here, Plaintiff brings a multistate FLSA collective action and multistate class action against Defendants. (Compl.) In contrast, Defendant Rod's Production Services' counterclaim is limited to claims against Plaintiff Jeremy Saenz. This Court specified that, "[c]urrently, the counterclaim is only against Plaintiff, and not the unnamed members of the collective action." (Doc. 60 at 3.) Thus, the Court agrees with Defendant's argument that *Ferrell* does not apply to the counterclaims against Plaintiff Jeremy Saenz. (Doc. 75 at 4 n.2.) The Court's ruling here will apply only to the counterclaims against Plaintiff Jeremy Saenz and does not decide the governing law for the remainder of the action.

Following the principles found in the Restatement (First) of Conflicts of Law, New Mexico courts apply "the place of contracting" rule. *Ferrell*, 188 P.3d at 1172 (quoting Restatement (First) of Conflict of Laws § 311 (1934)). Wherever the parties executed the contract, the law of that state governs the contract interpretation. Restatement (First) of Conflict of Laws § 311. The parties executed their Agreement in Texas. (Countercl. Ex. 1 at 4.) For the purposes of the counterclaims against Plaintiff, the Court will interpret the contract under Texas law.

To be valid under Texas law, exculpatory and "indemnity clauses must meet certain fair notice requirements." *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 169 (Tex. App. 2002); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993) (holding that the policy considerations requiring fair notice for indemnity clauses apply equally to exculpatory releases). Specifically, "an exculpatory indemnity clause must be express and conspicuous." *Chesapeake Operating*, 94 S.W.3d at 169. To meet the "express"

7

requirement, the party seeking indemnity from its own actions must state its "intent in specific terms within the four corners of the contract." *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990) (explaining express negligence requirement); *see Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 56 (Tex. 1991) (citing *Enserch* for the express indemnification standard in the oil and gas agreement context). To be conspicuous, the nature of the agreement "must appear on the face of the contract to attract the attention of a reasonable person when he looks at it." *Dresser Indus.*, 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n*, 482 S.W.2d 841, 843 (Tex. 1972)).

   2. *The Agreement Provision*

The relevant provision of the Agreement reads as follows:

> **INDEMNITY:**
> Contractor agrees to protect, defend, indemnify and hold harmless Rod's Production Services, LLC, its officers, directors, employees or their invitees, and any customer for whom Rod's Production Services, LLC is performing services, from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the joint or concurrent negligence of Rod's Production Services, LLC, any theory of strict liability and defect of premises, arising in connection herewith in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of bodily injury, death or damage to property.
>
> Rod's Production Services, LLC. agrees to protect, defend, indemnify and hold harmless Contractor, its officers, directors, employees or their invitees from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the joint or concurrent negligence of Contractor, any theory of strict liability and defect of premises, arising in connection herewith in favor of Rod's Production Services, UC [sic] employees, Rod's Production Services, LLC subcontractors (other than Contractor herein) or their employees, or Rod's Production Services, LLC invitees on account of bodily injury, death or damage to property.
>
> Both Rod's Production Services and Contractor will carry at least the minimum insurance limits described above in support of the indemnity agreements contained herein

(Countercl. ¶ 20; Countercl. Ex. 1 at 3, Doc. 61-1.)  On the signature page of the Agreement, an underlined sentence advises, "This Agreement contains Hold Harmless and Indemnity provisions.  Please read carefully."  (Countercl. Ex. 1 at 4.)

Pointing to the Agreement, Defendant asserts that this language creates an express and conspicuous mutual indemnity agreement.  (Doc. 75 at 15.)  Without a doubt, this language does create a mutual indemnity agreement.  *See, e.g.*, *Maxus Exploration Co.*, 817 S.W.2d at 56 (finding similar phrases to create an express indemnity agreement); *Chesapeake Operating, Inc.*, 94 S.W.3d at 169 (holding that the phrase "without limit and without regard to the cause or causes thereof or the negligence of any party or parties" meets express negligence test for indemnification agreement); *Adams Res. Exploration Corp. v. Res. Drilling, Inc.*, 761 S.W.2d 63, 64 (Tex. Ct. App. 1988) (finding similar phrases to create an express indemnity agreement).  In fact, Plaintiff agrees that this language creates a mutual indemnity agreement.  (Doc. 71 at 2; Doc. 82 at 10-11.)  Plaintiff, however, argues that an indemnity agreement, as it is traditionally interpreted, does not support Defendant's claim.  (Doc. 71 at 2.)  Instead of applying the indemnity agreement, Plaintiff posits, Defendant is trying to broaden the scope of the agreement to cover exculpation.  (*Id.*)  Defendant itself refers to the agreement as "an exculpatory-indemnity clause." (Doc. 75 at 9.)

"An exculpatory clause or a release of liability and an indemnity provision have distinctive characteristics that distinguish one from the other."  *Derr Const. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. Ct. App. 1992); *see also Wallerstein v. Spirt*, 8 S.W.3d 774, 779 (Tex. Ct. App. 1999) ("A release and an indemnity have characteristics distinct from each other.").  "[A] release surrenders legal rights or obligations between the parties to an agreement.  It operates to extinguish the claim or cause of action as effectively as would a prior judgment

9

between the parties and is an absolute bar to any right of action on the released matter." *Dresser Indus.*, 853 S.W.2d at 508 (citations omitted). In comparison, an indemnity agreement "creates a potential cause of action in the indemnitee against the indemnitor" and serves as "a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability." *Id.* (citations omitted). Unlike an exculpatory release, "an indemnity provision does not apply to claims between the parties to the agreement. Rather it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision." *Derr Const. Co.*, 846 S.W.2d at 858; *Miller Global Properties, LLC v. Marriott Int'l, Inc.*, 418 S.W.3d 342, 352 n.1 (Tex. Ct. App. 2013) (quoting same).

The plain language of the Agreement demonstrates that the provision at issue is an indemnification and not a release. In a simplified form, the Agreement reads: Plaintiff "agrees to protect, defend, indemnify and hold harmless" Defendants "from and against all claims, demands, and causes of action . . . arising in connection herewith in favor of" Plaintiff's employees and other third parties "on account of bodily injury, death or damage to property." (Countercl. ¶ 20.) This provision contains "[t]ypical indemnity language" such as "indemnify, save, protect, save/hold harmless." *Derr*, 846 S.W.2d at 859. It does not contain the standard exculpatory release language, including "release, discharge, relinquish." *Id.* Examining similar provisions, Texas courts have found that such language constitutes an indemnity and not a release. *See MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 64 (Tex. Ct. App. 2005) (holding that the promise to hold "harmless from any loss, claim, or expense" created an indemnification and not a release); *see also Derr*, 846 S.W.2d at 859-60 (comparing indemnification language to release/exculpation language).

10

### 3. *Defendant's Claim*

Before the Court can determine whether the contract language provides fair notice, the Court must first determine the scope of Defendant's contract claim. Without knowing the scope of Defendant's assertion, the Court cannot determine what type of fair notification Plaintiff needed. Defendant alleges that the "broad indemnification clause in the [Agreement] is exculpatory in nature and require[s] Saenz Services to indemnify [Defendant] for all damages, including attorney fees and costs spent in defending Saenz Services' lawsuit." (Countercl. ¶ 43.) Given the Court's finding that the provision is an indemnity clause, the provision cannot support Defendant's counterclaim.

Adopting Defendant's argument that this indemnification provision supports Defendant's second cause of action in the counterclaim would require the Court to make several logical leaps. First, Defendant asks the Court to believe that the indemnification clause should cover claims arising between Plaintiff and Defendant. (Countercl. ¶¶ 44-46.) This assertion runs contrary to indemnity law, where the indemnification obligation generally pertains to claims brought by third parties, not claims between the contracting parties. *Derr Const. Co.*, 846 S.W.2d at 858. The provision lists claims from "Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees." (Countercl. ¶ 20.) Defendant could have listed "the Contractor" as one of the enumerated parties, but chose not to do so. The Court is not convinced that the indemnification provision covers claims that Plaintiff brings against Defendant.

Second, Defendant has to persuade the Court that the indemnification agreement covers the type of claim Defendant makes. Defendant demands indemnification for Plaintiff's FLSA litigation, which Defendant contends is a breach of contract. (Doc. 75 at 2-3.) Defendant argues that the plain language of the Agreement covers such situations because Plaintiff agreed to

indemnify Defendant "against all claims, demands, and causes of action . . . arising in connection herewith . . . on account of bodily injury, death or damage to property." (Countercl. ¶ 20.) To prove that this provision applies here, Defendant must convince the Court that indemnification for FLSA litigation "aris[es] in connection" to the Agreement. Arguably, statutory litigation rights exist beyond contract terms. *Accord Casias v. Distribution Mgmt. Corp.*, No. 1:11-CV-00874 MV/RHS, 2012 WL 4511376, at *7 (D.N.M. Sept. 28, 2012) ("[The] court was forced to engage in mental gymnastics to characterize the loss as one arising from the plaintiffs' purported contractual obligation to work for a liquidated fee, when in fact the loss much more directly arose out of the defendant's alleged violation of its statutory obligations under the FLSA."). Similarly, Defendant needs to prove that the FLSA litigation caused "damage to property" within the meaning of the provision. The Court cannot know, however, the nature of the damage until the FLSA action is decided on the merits. Currently, Defendant's counterclaim is not ripe for adjudication and the Court is unable to evaluate whether Defendant has suffered property damage within the meaning of the provision. *Cf. Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999) ("Any claim [the indemnitee] could have asserted, however, could not have accrued until all of [the indemnitee's] potential liabilities . . . became fixed and certain by rendition of a judgment.").

Ultimately, in order to give the provision the meaning Defendant desires, the Court would have to broaden the scope of the provision. Defendant admits that its claim for costs and fees in defending this suit do not fit neatly into a traditional claim for indemnification. (Doc. 75 at 8.) Defendant "is not seeking protection against claims made by parties wholly outside of the contract . . . ." (*Id.* at 8-9.) To cover the scope of the claim it makes, Defendant asks the Court

to construe the provision as "an exculpatory-indemnity clause that applies to both Saenz Services' acts and [Defendant's] own acts." (*Id.* at 9.)

The Court declines to adopt this interpretation. When construing contracts, courts base their rulings on the language as written and do not read contracts to apply more broadly than written. *See Singleton v. Crown Central Petroleum Corp.*, 729 S.W.2d 690 (Tex. 1987) (striking a broadly worded indemnity provision because it did not specifically state that there was indemnity for concurrent negligence). As a general rule of contract interpretation, "a contract should be construed most strongly against the drafter." *United States v. Seckinger*, 397 U.S. 203, 210 (1970); *see also Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex. 1984) (explaining that, as a matter of contract interpretation, a line of credit "is construed most strictly against the bank because it drafted the letter"). In particular, "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *Id.* at 211. Because Defendant drafted the provision, the Court is not inclined to construe the provision more broadly than written.

Even if the Court opted to read the provision as broadly as Defendant claims, the provision is void because it fails the fair notice test. Without a specific reference to exculpation or to claims between the parties, the provision fails the "express" requirement. *See Gulf Coast Masonry, Inc. v. Owens–Illinois, Inc.*, 739 S.W.2d 239 (Tex. 1987) (indemnity clause which does not make express reference to the type of action fails the express doctrine). Nor is a provision conspicuous if it is mislabeled. *See Dresser Indus.*, 853 S.W.2d at 510 (discussing that an indemnity provision was "not conspicuous and was therefore unenforceable because it was hidden . . . under a paragraph entitled 'Warranty'").

13

The language of the contract provision is not broad enough to support Defendant's exculpation claim in these circumstances. Because the Court decides the matter based on contract interpretation, the Court does not reach Plaintiff's public policy arguments. The Court dismisses the cause of action based on the indemnification provision. Furthermore, in Count 2, Defendant does not assert any breach of contract claims beyond the indemnification provision. Therefore, the Court dismisses Count 2 in its entirety.

### C. Unjust Enrichment and Equitable Set-off Claim

Defendant's third cause of action is "an alternative claim" that is only implicated if Plaintiff prevails in his FLSA suit. (Countercl. ¶ 54.) According to the Counterclaim, "[i]f Saenz Services prevails on the claims in this lawsuit and the Court does not enforce the independent contractor relationship, then Saenz Services was unjustly enriched and [Defendant] is entitled to an equitable set off and any other appropriate equitable remedies." (Countercl. ¶ 55.)

Plaintiff seeks to dismiss this counterclaim on the basis that it mirrors Defendant's affirmative defenses. Under the Rules of Civil Procedure, "[i]f a party mistakenly designates a defense as a counterclaim . . . the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). In fact, Defendant asserted unjust enrichment and set-off claims in its affirmative defenses. (Answer ¶¶ 112, 114, 117.) Defendant claims that its counterclaim is broader than its affirmative defenses because the counterclaim alleges that Saenz made misleading representations. (Doc. 75 at 23-24.) The Court is not convinced that these allegations broaden these causes of action in any way. Moreover, a setoff does not provide affirmative relief. *See* 20 Am. Jur. 2d Counterclaim, Recoupment, Etc. § 6 (2015) ("[a] setoff is a reduction from an amount otherwise owed,

14

therefore, and cannot result in a net recovery in favor of the party asserting the defense of setoff.").

In addition to these concerns, the Court dismisses this cause of action on other grounds. Significantly, the Tenth Circuit disapproves of employers asserting set-offs and counterclaims in FLSA actions. *See Donovan v. Pointon*, 717 F.2d 1320, 1323 (10th Cir. 1983) (affirming district court's denial of the employer's request to assert set-offs, counterclaims, and third-party complaints). Similarly, the Court will not approve an affirmative claim of unjust enrichment to recover duly paid wages, even if Plaintiff was paid well under the contract. *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) ("And even those employers who pay wages above the minimum and who maintain no substandard working conditions must respect the [FLSA's] statutory pattern . . . . employees are not to be deprived of the benefits of the Act simply because they are well paid . . . ."). "To permit [an employer] in such a [FLSA] proceeding to try his private claims, real or imagined, against his employees would delay and even subvert the whole process." *Pointon*, 717 F.2d at 1323; *Saarela v. Union Colony Protective Servs., Inc.*, No. 13-CV-01637-MSK-MJW, 2014 WL 3408771, at *5 (D. Colo. July 14, 2014) ("Since *Donovan*, most courts considering the issue have generally agreed that "setoffs and recoupments are disfavored in FLSA suits.").

Throughout this litigation, Plaintiff has asserted that the Court must dismiss all the counterclaims on public policy grounds. (Doc. 36 at 13-15; Doc. 71 at 15-16.) Defendant rebuffed the public policy argument by factually alleging that Plaintiff was an independent contractor and that FLSA policy does not apply to him. (Doc. 75 at 21.) This third counterclaim, however, is only triggered if Plaintiff prevails and is found to be a FLSA-eligible employee. Indisputably, FLSA is implicated by the third cause of action and, in turn, so is the

public policy surrounding FLSA. As determined by the Tenth Circuit, public policy disfavors counterclaims for setoff and unjust enrichment in FLSA litigation. *Pointon*, 717 F.2d at 1323; *Saarela*, 2014 WL 3408771, at *5. Accordingly, Defendant's third counterclaim is dismissed. Defendant Rod's Production Services can raise any prepayment issues during the calculation of damages stage or in a separate action. *See Pointon*, 717 F.2d at 1323 (discussing the employer's right to bring a separate suit).

### IV. CONCLUSION

Plaintiff moved to dismiss Defendant's three counterclaims. Given that the main action is more likely to settle the controversy between the parties than a declaratory judgment, the Court declines to entertain Defendant's request for a declaratory judgment. Additionally, the Court finds that the Agreement as written does not support Defendant's claim for indemnification and breach of contract. Thus, the Court dismisses the second cause of action. Finally, the Court dismisses Defendant's counterclaims for unjust enrichment and equitable setoff on policy grounds. In so doing, the Court dismisses all three of Defendant's counterclaims.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Dismiss Defendants' Counterclaims (Doc. 71) is **GRANTED**.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE